**The OHIO GRAIN COMPANY, Plaintiff,**

v.

**Ronald F. GENTIS, Sue E. Gentis, Defendants.**

**In the Matter of Ronald E. GENTIS (and) Sue E. Gentis, Debtors.**

**Bankruptcy No. 3–80–01072. Adv. No. 3–80–0383.**

United States Bankruptcy Court, S. D. Ohio, Western Division.

April 1, 1981.

David F. Allen, Marysville, Ohio, for plaintiff.

John R. Butz, Springfield, Ohio, for defendants.

Carl E. Juergens, Springfield, Ohio, trustee.

## FACTS

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court for disposition of the plaintiff's complaint to determine the dischargeability of its claim against Ronald F. Gentis[1]. The Court held a pretrial conference on August 15, 1980 at which the parties submitted a joint pretrial order. The matter was tried on August 29, 1980. The following decision is based upon the joint pretrial order, evidence adduced at trial and posttrial memoranda of law submitted by both parties.

The above debtors, Sue E. and Ronald F. Gentis, filed their petition for relief with this Court under Chapter 7 of Title 11, United States Code on April 18, 1980. The schedules of debts and property accompanying the petition show the debtors owe approximately $2,000.00 of priority debts, $590,000.00 of secured debts and $678,000.00 of unsecured debts. The debtors own no real estate. They list approximately $170,-000.00 worth of personal property, $143,-950.00 of which consist of farm supplies and implements. The couple has claimed various exemptions pursuant to Ohio Revised Code Section 2329.66(A).

The plaintiff filed this complaint in July 14, 1980. The basis of the complaint is a

---

1. The complaint originally named both debtors as defendants, but, at the trial, the plaintiff dismissed its cause of action against Sue E. Gentis.

judgment Ohio Grain Company obtained against the debtors in Case No. 80–CIV–18 in the Court of Common Pleas of Champaign County, Ohio. The judgment, dated April 21, 1980, is for $51,528.49 plus interest. The events precipitating the judgment began in early 1979. At that time, Ronald F. Gentis applied for a loan from the Columbus Production Credit Association under the lender's patron program. From March, 1979 through July, 1979, Gentis signed three notes in favor of Columbus Production Credit for a total of $61,589.00. The plaintiff, Ohio Grain Company, acted as Gentis's patron, and both parties were required to sign the notes. In January, 1980 the notes came due, but Gentis could not make the payments and defaulted. The Ohio Grain Company then succeeded to the debtor's obligation to pay the balance due of $50,589.00. Upon payment, the Columbus Production Credit Association assigned all of its right, title and interest in the subject notes together with the security agreement and financing statement securing the notes to the above plaintiff. Ohio Grain Company's claim before this Court is that the financial statement the debtor gave to Columbus Production Credit to induce the loan and which induced the plaintiff to be a patron was materially false; accordingly, the judgment Ohio Grain obtained against the debtor on the above notes should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

The plaintiff's second cause of action arising out of the above-described notes originally was for alleged fraud perpetrated by the debtors in selling crops of corn and soybeans which were collateral to secure the loan. The plaintiff amended this cause to one for wilful and malicious injury to its property by virtue of the sale, in violation of 11 U.S.C. § 523(a)(6).

With regard to its first cause of action, the plaintiff offered the testimony of its Vice President, James D. Westfall. Mr. Westfall testified that he went to the defendant's farm to discuss sales and credit terms for the subject transaction. In his own handwriting, he filled out a financial statement based on information provided by the defendant; that statement is marked Exhibit 11. The defendant did not sign this statement; however he testified that Exhibit 11 contains substantially the same information he gave to Mr. Westfall. That document shows the defendant's assets to be valued at $400,000.00 and his liabilities to be $192,000.00. One item on the statement is designated "Unsecured Notes ... ASCS ... $12,000." We believe this is the debt to the Commodity Credit Corporation shown in the schedules as a claim for $150,000.00. The defendant testified this loan was secured by stored grain valued at approximately $250,000.00.

Exhibits 5, 6 and 7 represent financial statements which the defendant did sign, but there is no asset and liability information on those statements. Under the heading "FINANCIAL STATEMENT" they are merely marked "ON FILE". Thus, the plaintiff's records contain one financial statement which actually contains the defendant's financial information but not his signature, and three financial statements which contain the defendant's signature but no financial information.

The basis for the plaintiff's claim that the defendant gave a materially false financial statement is that the above financial statement (marked as Exhibit 11) does not show the defendant's liability to the Federal Land Bank in the amount of $80,000.00 nor the defendant's debt to the Commodity Credit Corporation for $150,000.00. Mr. Westfall testified that if the plaintiff had known about these two obligations it would not have extended credit to the defendant because he would not have had a two to one asset to liability ratio as required for the plaintiff to guarantee loans. On cross examination, Mr. Westfall stated that he did not make any other inquiries into the defendant's financial condition aside from gathering information from Gentis for the financial statement. He also testified that the availability of the defendant's crops as collateral was the main incentive for approving the subject loans. Although the harvested crops of soybeans and corn were vital to the plaintiff's position, Mr. Westfall

testified that he did not discuss the subject of stored grain nor did he inspect the defendant's property to examine the stored grain.

The plaintiff's next witness was its President, Ronald Scheiderer. He testified that as of June, 1979 he assumed direct responsibility for the company's credit dealings with Mr. Gentis; however, he did not conduct further inquiries into the defendant's financial condition or get a new financial statement. He confirmed Mr. Westfall's testimony that the Ohio Grain Company requires at least a two to one asset/liability ratio and would not have extended credit to the defendant if it had known of the omitted obligations. He also states Ohio Grain would not have guaranteed the loans without the security of the growing crops because of the amount of debts shown on the financial statement.

Mr. Scheiderer testified regarding Exhibit 10 which represents a Financing Statement and Security Agreement signed by Ronald F. Gentis as debtor and by R. K. Scheiderer as representative of the Columbus Production Credit Association, the lender. This Security Agreement covers all crops of corn and soybeans to be planted and/or growing and all harvested crops of corn and soybeans. The Agreement further states that all of the secured property is located on the property of Dean Wilson, and the statement described Mr. Wilson as the record owner of the property on which the collateral would be found.

The plaintiff next called the defendant as on cross examination. When questioned about Loan Applications submitted to Columbus Production Credit (Exhibits 5, 6 and 7), he admitted signing Exhibits 5 and 7 but claimed the signature on Exhibit 6 is not his. The defendant also denies his signature appears on Exhibit 10. An examination of the signatures on all these documents convinces us they are the same signature. Accordingly, we find the defendant did sign Exhibits 5, 6, 7 and 10.

Regarding the contested loan to Commodity Credit, the defendant testified that he mentioned the obligation to the representatives of Columbus Production Credit but did not give a dollar amount because the debt was secured by stored grain. He stated he had at least $250,000.00 worth of grain in storage at that time but only disclosed $100,000.00 worth because the remainder secured the Commodity Credit debt. As to his obligation to the Federal Land Bank, the defendant testified he did not include that in his financial statement because it was secured by his father-in-law's property.

## DECISION AND ORDER

■ The crucial document in this case is plaintiff's Exhibit 11 entitled "LOAN APPLICATION—PATRON". This document is divided into several sections. One section is entitled *"FINANCIAL STATEMENT"*. This section has given rise to the present litigation. The plaintiff claims the defendant omitted material facts about his liabilities and the plaintiff relied on this materially false section of the loan application when determining whether to extend credit to the defendant. The controversial data reads as follows:

| | Liabilities |
|---|---|
| Open Accounts Owed ........... $ | |
| Unsecured Notes...ASCS ....... $ | 12,000 |
| Personal Property Liens ......... | |
| J. C. Mossic, IH | $ 80,000 |
| Taxes, Rent, etc. .............. $ | |
| Urbana PCA Cattle | $ 10,000 |
| " " Open | $ 90,000 |
| Farm Mortgage ............... $ | |
| Other Property Mtgs. .......... $ | |
| TOTAL LIABILITIES ....... $ | 192,000 |

Based upon our analysis of the above form as well as of the testimony at trial, we are not convinced that the defendant gave a materially false statement with the intent to deceive the plaintiff or Columbus Production Credit. The defendant did not personally fill-out the form; a representative of the plaintiff filled-out the form based upon the defendant's responses to questions. We find the above form is very limited in the scope of liabilities it seeks to discover.

If the defendant merely supplied the plaintiff with the information sought, we do not believe he would have known or should have known to disclose the subject additional debts. The debt to the Federal Land Bank was secured by the debtor's father-in-law's property; thus, it would not have been an Open Account, or an Unsecured Account or a Personal Property lien. The categories of "Farm Mortgage" and "Other Property Mtgs" could possibly have fit this debt; however, since this was a financial statement concerning the debtor's property and liabilities, it is reasonable to believe he did not know he was supposed to list mortgages on other people's property. There is no evidence in the record that the plaintiff asked for information regarding the defendant's liabilities which were secured by property of another.

With regard to his obligation to Commodity Credit Corporation, the defendant testified he did not disclose the amount of this debt because it was secured by stored grain. He also testified that the assets listed in the financial statement covered only that portion of his stored grain which was unencumbered; thus, the value of that asset was listed as $100,000.00 instead of $250,000.00 which was the value of his entire volume of stored grain. We believe this testimony is evidence of the defendant's state of mind and find that he did not intend to deceive his creditors by giving them materially false financial information.

The plaintiff's next cause of action is based upon 11 U.S.C. § 523(a)(6); it claims the defendant wilfully and maliciously converted its property by selling the same despite a security agreement covering the property. Item 4, of the Security Agreement (marked as Exhibit 10) provides "That the Debtor . . . . will not further encumber, conceal, remove, sell or otherwise dispose of the same without the written consent of the Lender . . . ." The plaintiff has a security interest in all crops of corn and soybeans to be planted or growing and on all harvested crops of corn and soybeans in which the debtor had an interest located at the farm of Dean Wilson at State Route 29 in Urbana, Ohio.

The defendant has made several defenses to the plaintiff's second cause. He alleges the plaintiff's cause should be dismissed because it has already instituted an action in state court against the buyers of the crops; thus, the defendant argues, the plaintiff should not make a double recovery on this claim. Next, the defendant alleges the plaintiff did not properly record the subject security agreement in the Champaign County Recorder's Office. Finally, the defendant argues the plaintiff cannot recover for a conversion because it has not proven damages.

We believe the only issue we need to decide is whether the defendant wilfully and maliciously injured the plaintiff's property.

The cases decided under the Bankruptcy Reform Act of 1978 interpreting 11 U.S.C. § 523(a)(6) have held that the sale of secured property is not *per se* a wilful and malicious injury to property. *In re Hodges*, 4 B.R. 513, 3 Bankr.Law Rep. (CCH) ¶ 67,-678 (Bkrtcy.); *In re Graham, Jr.*, 4 B.R. 604, 3 Bankr.Law Rep. (CCH) ¶ 67,591 (Bkrtcy.). These cases trace the development of the conversion issue in bankruptcy beginning with the case of *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) wherein Justice Cardoza stated,

There is no doubt that an act of conversion, if wilful and malicious, is an injury to property within the scope of this exception [to discharge] . . . . But a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice . . . .

293 U.S. 332, 55 S.Ct. 153. (footnotes omitted).

 We do not believe the record herein contains any information or evidence tending to prove the defendant sold his grain with the intention of harming the plaintiff. We do not find any evidence of a scheme on the part of the defendant toward

the plaintiff. The record merely indicates that the defendant sold collateral. The plaintiff has cited several cases which purport to treat this issue. We do not believe those cases are correct interpretations of the bankruptcy law as stated in *Davis v. Aetna, supra.* We hold that malice and deliberation together are the prerequisites to a cause of action under § 523(a)(6). We are not convinced that the evidence submitted preponderates against the defendant. The record indicates that the debtor sold the encumbered grain from July, 1979 through January, 1980. The pattern does not appear to be one of a clandestine scheme endeavored to thwart the plaintiff's interest. It appears that the debtor regularly sold quantities of grain in the regular course of his business operations.

Accordingly, it is *ORDERED, ADJUDGED AND DECREED*, that the record does not support the plaintiff's claim that the defendant submitted a materially false financial statement with the intent to deceive the plaintiff in violation of 11 U.S.C. § 523(a)(2); it is further

*ORDERED, ADJUDGED AND DECREED*, that the record does not support the plaintiff's claim that the defendant wilfully and maliciously converted its property in violation of 11 U.S.C. § 523(a)(6).