**UNITED STATES, Appellant,**

v.

**Roger D. MOORE, 155 44 8356, Gunnery Sergeant (E–7), U.S. Marine Corps, Appellee.**

**Misc. Dkt. No. 85–26.**

U.S. Navy-Marine Corps Court of Military Review.

13 March 1986.

LCDR R. CLAYTON SEAMAN, JR., JAGC, USN, Appellate Government Counsel.

LCDR JAMES J. QUIGLEY, JAGC, USN, Appellate Defense Counsel.

LT H. LEARTHUR WRIGHT, II, JAGC, USNR, Appellate Defense Counsel.

MIELCZARSKI, Judge:

This is a Government appeal pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862, requesting reversal of a military judge's ruling granting a defense motion to dismiss all charges and specifications against the accused for lack of jurisdiction. The Charges alleged multiple specifications of sodomy, assault, adultery, and solicitation to commit prostitution and sodomy in violation of Articles 125, 128, and 134, UCMJ, 10 U.S.C. §§ 925, 928, 934, and they were referred to trial by a special court-martial. At trial, the defense moved to dismiss the charges claiming lack of jurisdiction because the charges were alleged to have taken place during a prior enlistment of the accused. After receiving evidence and hearing arguments, the military judge granted the motion. The Government requested reconsideration of this ruling on the following day; and after receiving additional evidence, the military judge reaffirmed his earlier ruling. The Government immediately filed notice of its intent to appeal. After careful consideration of the record made below, the Government's appeal, and the answer filed by appellee, we reverse the ruling of the military judge.

## I

In his answer submitted in opposition to the Government's appeal, appellee contends that the military judge's ruling amounts to a factual determination that he was discharged at the end of his obligated term of military service and that this determination of fact should not be disturbed as it is supported by the evidence of record. *United States v. Burris*, 21 M.J. 140 (C.M.A. 1985). We acknowledge our responsibility to accept the findings of fact as determined by the trial judge below where those findings are "fairly supported by the record." *Burris* at 144. We are not obligated, however, to defer to flawed legal reasoning and accept erroneous conclusions. *See* Article 62(b), UCMJ. We view the military judge's ruling that jurisdiction did not exist to be a conclusion of law. We will, therefore, consider the merits of the Government's appeal.

## II

The controversy in this case revolves around the consequences of the events leading up to the reenlistment of the accused in early March of 1985. The following extract from the record below contains the military judge's findings of fact, legal reasoning, and ruling on the motion.

> MJ: The court will come to order. All parties who were present when we recessed are once again present.
>
> We're in session now so I can put the findings of fact on the record and the legal reasoning.
>
> Roman Numeral I—Facts:
>
> (A) The Chronology:
>
> I find the following events to have occurred on the dates indicated, 11 March '68, the accused enlisted;
>
> 4 February '81, the accused re-enlisted for four years;
>
> 24 January '85, a message from GC, MCB, Camp Lejeune to CMC, requesting permission to allow the accused to re-enlist;
>
> 1 February '85, Friday, the accused signed an agreement to extend his enlistment for one month to allow processing of his re-enlistment documents;
>
> 3 February '85 was a Sunday, the end of his enlistment;
>
> 4 February '85 was a Monday, which was the effective date of the agreement to extend enlistment, signed by the accused on 1 February;
>
> 7 February '85, message from CMC to CG, MCB, Camp Lejeune, North Carolina, authorizing the accused to be— authorizing the re-enlistment of the accused;
>
> 11 February '85, the 7 February '85 message was received by a party un— which was unclear to me; I would assume it to be CG, MCB;
>
> 1 March '85, Friday, the accused was released from duty—or discharged from active duty by DD Form—by Form DD214; by released from active duty/discharge, I'm just stating what the title of the form is; it's normally referred to as "released from active duty";
>
> 1 March 85, Friday, the same day, the accused executed a re-enlistment for a term of three years;
>
> 2 March '85, Saturday, was the effective date of the re-enlistment;
>
> 3 March '85, Sunday, was the end of the extension.
>
> (B) North Carolina has a statute titled "Article 26, Section 14–177," which covers crimes against nature. See Appellate Exhibit VII—just a moment— give me Appellate Exhibit VI, that's the IRAM section. (The document was handed to the military judge.)
>
> This is (C), Marine Corps policy set forth in the IRAM, page—which is in Note 1, found on page 4–19 of the IRAM, see Appellate Exhibit VI, page 5, states in essence—states, "In the case of all re-enlistments of Marines on active duty, the re-enlistment oath will be administered a day in advance of the effective date of re-enlistment. In the event the effective date of re-enlistment is on a Monday or another day following a two or three-day holiday

period, the re-enlistment oath may be administered on the last working day immediately preceding the weekend or holiday period."

End of findings of fact.

Roman Numeral II—Legal Reasoning:

(A) *U.S. v. CLARDY* controls. Although it upheld jurisdiction over the accused, who was discharged and re-enlisted before the end of his current enlistment, and thereby overruling *GINYARD*, in regard to short-term discharge, i.e. discharge before end of current enlistment to be re-enlisted early, the court specifically stated that it did not question the *GIN*—the *HIRSHBERG* holding that military jurisdiction is terminated by a discharge at the end of enlistment, even though the servicemember immediately re-enters the service. The accused was re-enlisted at the end of his enlistment extension on 1 March, as per Marine Corps policy, vice 2 March, and was not—rather—and was re-enlisted effective 3 March 1985. His discharge was in no way a short-term discharge.

(B) Concerning Article 3(a), concerning the Article 3(a) hurdle, I find that, one, Specifications 1, 3, 4, and 6 of Charge III and the specification of Charge II are not under the court's jurisdiction because the maximum confinement under the UCMJ is less than five years; two, the two specifications of Charge II and Specifications 2 and 5 of Charge III are not under the court's jurisdiction because sodomy and soliciting sodomy, and inducing to engage in sodomy, which I took to be pandering, as suggested in the defense brief, are triable under North Carolina law, under Section 14-177, Crimes Against Nature, see Appellate Exhibit VII, page two, under the section entitled, "Case Notes," given with the topic of definition. That's the end of the reasoning.

Is there anything further to take up by either side before the court's adjourned?

TC: Not by the government, Your Honor.

DC: Defense just has one question—on your legal reasoning, part B, I think you mentioned something about the accused being discharged on 3—effective re-enlistment would be on 3 March, actually it was 2 March. The judge mentioned "3." I don't know if that was a mistake in writing or—

MJ: No, that was a slip on my part. Wait a minute. (Looking through notes.) You are correct. The effective date of his re-enlistment is "2 March." I stated that in my findings of fact. It was a slip of the tongue. Thank you.

Anything further to take up?

DC: Sir, does that mean the motion is granted? Those magic words weren't said. I—

MJ: I'm sorry.

The motion is granted and all charges and specifications against Gunnery Sergeant MOORE are dismissed.

The court's adjourned.

Notwithstanding their basic agreement over the occurrence of the events surrounding the accused's discharge and reenlistment, the parties differed sharply at the trial level over the interpretation to be given these events. The Government's position was that the accused's discharge occurred two days before the expiration of a valid extension on the prior enlistment and that his subsequent reenlistment was effective one day before the expiration date. The Government's theory was that these events constitute an early termination for purposes of reenlistment within the meaning of *United States v. Clardy*, 13 M.J. 308 (C.M.A.1982).

The defense, on the other hand, contended that since the expiration date of the extension fell on a Sunday and since the enlistment oath and all paperwork to effect the discharge and reenlistment were executed on the preceding Friday, the procedure was the functional equivalent of a discharge and reenlistment at the end of a

completed enlistment. In support of its position the defense produced an extract of the Marine Corps Order which is the basis for finding of fact "C". The defense theorized that because the prior period of enlistment as extended had functionally come to its conclusion on Friday, jurisdiction over the alleged offenses lapsed pursuant to the rationale set forth in *United States ex rel Hirshberg v. Cooke*, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949) and cited in *Clardy* as an exception to the rule it announced. The military judge apparently agreed with the defense theory in making his ruling.

### III

In *United States v. Clardy, supra,* the Court of Military Appeals held that court-martial jurisdiction exists to try a service member for an offense occurring during a prior enlistment when the member was discharged for the purpose of reenlistment and the member's military status remained uninterrupted. Because the Court was overruling its holding in *United States v. Ginyard,* 16 U.S.C.M.A. 512, 37 C.M.R. 132 (1967), its decision was made prospective in nature. Chief Judge Everett in writing the lead opinion comprehensively traced the judicial and legislative history of this facet of court-martial jurisdiction and we will not repeat it here. In announcing its rule, the *Clardy* opinion examined the Supreme Court holding in *United States ex rel Hirshberg v. Cooke, supra,* and distinguished *Hirshberg* on its facts as involving a servicemember who was discharged at the conclusion of his period of service and then reenlisted after a hiatus of several hours during which the member reverted to civilian status. Chief Judge Everett did not dispute that a *break* in "status" or "active duty", irrespective of the length of time, between discharge and reenlistment, occurring at the end of an enlistment, is sufficient to terminate jurisdiction under the *Hirshberg* ruling.

The case at bar, however, does not involve a *Hirshberg* fact pattern. This accused had an active duty commitment through Sunday. The administrative procedure that took place on the preceding Friday was clearly accomplished *within* the period of active duty to which he was obligated and it was accomplished for the purpose of his reenlistment. We reject the concept of "functional equivalent of completion of active service" advanced by the defense at the trial level and apparently accepted by the military judge. We find no significance in the fact that the administrative processing was accomplished only two days prior to the end of the accused's active duty commitment. The key factor is that it was accomplished while the accused was on active duty and while he retained his military status.

Accordingly, the ruling of the military judge in granting the defense motion to dismiss the charges and specifications for lack of jurisdiction is reversed and the record is remanded to the military judge for further proceedings not inconsistent with this decision.

Senior Judge COUGHLIN and Judge DECARLO concur.