**UNITED STATES of America,
Appellee,**

v.

**Raymond BIRCH, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Birsen N. BIRCH, Appellant.
Nos. 72–1376, 72–1377.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1972.

Decided Dec. 12, 1972.

---

Thomas C. Green, Washington, D. C. (Ginsburg, Feldman & Bress, and David G. Bress, Washington, D. C., on brief), for appellants.

George Beall, U. S. Atty., D. Md. (Paul R. Kramer, Deputy U. S. Atty., and Herbert Better, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Raymond R. Birch and his wife, Birsen N. Birch, were convicted of violating 18 U.S.C. § 499 (1970).[1] On this appeal they contend that the district court lacked jurisdiction to try them, that the court should have granted their motions for judgments of acquittal, and that the court should have allowed them to introduce evidence in support of the defenses of justification and duress. Finding no cause for reversal in these assignments of error, we affirm.

Mr. Birch, a civilian employee of the United States Department of Defense, lived with his wife in the Federal Republic of Germany. In October 1970 a German court convicted both of them of mistreating a young servant and sentenced them to jail. The court released them from custody pending appeal upon the condition, among others, that they surrender their identity documents and passports. Embittered by their trial and apprehensive of the future, they decided to flee from Germany to the United States. They sought help from a United States army sergeant, who provided them with false applications for identity cards, immunization records, and leave orders in the fictitious names of Sergeant 1st class Jack L. Finn and Sergeant 1st class Vivian L. Finn. Using these aliases, Mr. and Mrs. Birch escaped from Germany on commercial airline flights to the United States.

 The indictment charged the Birches violated § 499 in Germany. The defendants do not challenge Congress's constitutional power to punish the extraterritorial forgery or false use of government documents. Instead, they contend (a) that in enacting § 499 Congress did not invoke extraterritorial jurisdiction, or (b) that even if it did, the indictment did not charge intent to de-

---

1. Title 18 U.S.C. § 499 provides:

Whoever falsely makes, forges, counterfeits, alters, or tampers with any naval, military, or official pass or permit, issued by or under the authority of the United States, or with intent to defraud uses or possesses any such pass or permit, or personates or falsely represents himself to be or not to be a person to whom such pass or permit has been duly issued, or willfully allows any other person to have or use any such pass or permit, issued for his use alone, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

The indictment against the Birches contains six counts. Count One charges:

". . . At Babenhausen, Federal Republic of Germany, Raymond R. Birch and Birsen N. Birch . . . did falsely make, forge, and counterfeit, and did cause to be falsely made, forged, and counterfeited, a military and official pass and permit, issued by and under the authority of the United States, to wit: false military leave orders in the name of one Sergeant First Class Jack L. Finn, which were to be used without legal authority by the defendant Raymond R. Birch."

Count Two charges the defendants violated the statute in the same manner as they did in Count One with respect to false leave orders in the name of Sergeant First Class Vivian L. Finn, which was to be used by Birsen N. Birch.

Count Three charges:

". . . At Munich . . . Raymond R. Birch . . . did, with intent to defraud, use and possess a falsely made, forged, and counterfeited military and official pass and permit, issued by and under the authority of the United States, to wit: false military leave orders in the name of one Sergeant First Class Jack L. Finn, in boarding Lufthansa Airlines flight #408 from Munich to New York."

Count Four charges a similar violation by Birsen N. Birch at Frankfurt.

Count Five charges:

". . . At Munich . . . Raymond R. Birch . . . did, with intent to defraud, personate and falsely represent himself to be a person to whom had been duly issued a falsely made, forged, and counterfeited military official pass and permit, issued by and under the authority of the United States, to wit: false military leave orders in the name of one Sergeant First Class Jack L. Finn, in boarding Lufthansa Airlines flight #408 from Munich to New York."

Count Six charges a similar violation against Birsen N. Birch at Frankfurt.

fraud the United States government, an essential predicate for extraterritorial jurisdiction.

A federal statute is not necessarily limited to crimes committed within the territorial jurisdiction of the United States because it lacks an express provision that it should be applied extraterritorially. United States v. Bowman, 260 U.S. 94, 97, 43 S.Ct. 39, 67 L.Ed. 149 (1922), which sanctioned a prosecution for defrauding a government corporation by acts committed on the high seas and in a foreign country, states the rule for determining whether a criminal law should be given extraterritorial effect. There the Court distinguished two classes of penal legislation: statutes punishing crimes against the peace and good order of the community apply only to acts committed within the territorial jurisdiction of the United States unless Congress directs otherwise; in contrast, laws punishing fraud against the government include by implication acts committed in foreign countries.[2] Extraterritoriality for § 499 should be inferred, therefore, because it is concerned with the counterfeiting and misuse of military passes, a species of fraud against the government. Moreover, the origin of § 499 supports this inference. The statute was originally enacted in 1917 when the United States was preparing to send a large expeditionary force to Europe.[3] It is reasonable to assume that Congress was aware that the integrity of military passes would be threatened abroad as well as at home, and it is proper to infer that Congress intended to protect the government against forgery of these papers wherever the armed forces of the United States were stationed.

■ The basis found in international law for extraterritorial application of § 499 is the principle of protective jurisdiction. The protective principle determines jurisdiction "by reference to the national interest injured by the offense."[4] It provides an appropriate ju-

---

2. Writing for the Court, in United States v. Bowman, 260 U.S. 94, 97–98, 43 S.Ct. 39, 41, 67 L.Ed. 149 (1922), Mr. Chief Justice Taft said:

 . . . The necessary *locus*, when not specially defined, depends upon the purpose of Congress as evinced by. the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nations. Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds, which affect the peace and good order of the community must, of course, be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard. . . .

 But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents. Some such offenses can only be committed within the territorial jurisdiction of the Government because of the local acts required to constitute them. Others are such that to limit their *locus* to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the *locus* shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

3. Act of June 15, 1917, ch. 30, title X, § 3, 40 Stat. 228.

4. Harvard Research in International Law, Jurisdiction with Respect to Crime, 29 Am.J.Int'l L.Supp. 437, 445 (1935). See United States v. Pizzarusso, 388 F.2d 8, 10 (2d Cir.), cert. denied, 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968); 1 Working Papers of the Na-

risdictional base for prosecuting a person who, acting beyond the territorial boundaries of the United States, falsifies its official documents.[5] Because the national interest is injured by the falsification of official documents no matter where the counterfeit is prepared, we conclude that Congress intended § 499 to apply to persons who commit its proscribed acts abroad.

■■ We also conclude that the indictment charged offenses against the United States. Each count is framed in the language of the statute and adequately alleges a violation of its provisions. This is ordinarily sufficient unless the statute omits an element of the offense or includes it by implication. United States v. Weems, 398 F.2d 274, 275 (4th Cir. 1968), cert. denied, 393 U.S. 1099, 89 S.Ct. 894, 21 L.Ed.2d 790 (1969). Here the statute is complete. The gravamen of the offenses is the assault on the integrity of the United States and its official documents. The United States has a legitimate interest in assuring foreign governments that its military passes are valid and that counterfeits of its official documents cannot be used with impunity to deceive the citizens and officials of foreign countries. Therefore, the district court correctly held that the indictment sufficiently charged a crime against the United States, although it specified that the Birches intended to use the forgeries to deceive foreign officials and airline employees.

■ The principal defect in the government's proof, Mr. and Mrs. Birch complain, is the absence of testimony from any eyewitness that they actually exhibited the forged leave orders to German custom officials and airline employees when they boarded the aircraft for travel to the United States. However, display of the forgeries is not an element of the crimes defined by the statute. The offenses charged in Counts Three and Four (use and possession with intent to defraud) were completed when the Birches having accepted possession of the forged papers from the army sergeant, boarded the aircraft intending to use the counterfeits to facilitate their departure. The offenses charged in Counts Five and Six (impersonation with intent to defraud) were completed when the Birches, armed with the forgeries, boarded the aircraft falsely posing as military personnel named Finn. We need not recite the evidence in detail. Viewing the proof presented by the government in its most favorable light, it tended to prove these charges beyond a reasonable doubt. Bell v. United States, 185 F.2d 302, 310 (4th Cir. 1950), cert. denied, 340 U.S. 930, 71 S.Ct. 492, 95 L.Ed. 671 (1951). Similarly, the evidence was sufficient to show that Mrs. Birch participated in the illegal activities charged in Counts One and Two.

■ Although the district judge allowed the defendants to present evidence of their concern over their plight to negate the intent to defraud required by § 499, he excluded evidence in support of the defenses of justification and duress. In this we find no error. To maintain the defense of duress or coercion the federal rule requires apprehension of impending death or serious bodily harm. D'Aquino v. United States, 192 F.2d 338,

tional Commission on Reform of Criminal Laws 69 (1970); George, Extraterritorial Application of Penal Legislation, 64 Mich.L.Rev. 609 (1966).

5. Prosecution for forgery of government documents is an aspect of the protective principle emphasized by Restatement (Second), Foreign Relations Law of the United States § 33:

§ 33. Protective Principle

(1) A state has jurisdiction to prescribe a rule of attaching legal consequences to conduct outside its territory that threatens its security as a state or the operation of its governmental functions, provided the conduct is generally recognized as a crime under the law of states that have reasonably developed legal systems.

(2) Conduct referred to in Subsection (1) included in particular the counterfeiting of the state's seals and currency, and the falsification of its official documents.

357–358 (9th Cir. 1951), cert. denied, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 (1952); Gillars v. United States, 87 U.S.App.D.C. 16, 182 F.2d 962, 976 (1950). The defendants asked the district court to apply a more lenient test, which, under the circumstances, he quite properly rejected. The defendants' belief that they were improperly convicted and their concern over the consequences of the judgment of the German court cannot justify their resort to crime. *Cf.* United States v. Haley, 417 F.2d 625 (4th Cir. 1969); Aderhold v. Soileau, 67 F.2d 259 (5th Cir. 1933).

Affirmed.