UNITED STATES, Appellee,

v.

Specialist Five Robert D. MOSLEY, SSN 545–02–0493, United States Army, Appellant.

CM 442016.

U. S. Army Court of Military Review.

29 Oct. 1982.

---

Major Raymond C. Ruppert, JAGC, and Captain Warren G. Foote, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Patrick M. Flachs, JAGC, and Captain Paul E. Jordan, JAGC, were on the pleadings for appellee.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

BADAMI, Judge:

This case is before us for review pursuant to Articles 66 and 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 866 and 869, to determine whether appellant's court-martial had jurisdiction as the offenses charged were committed prior to his honorable discharge and reenlistment.

On 15 October 1980, a Specialist Four Cleghorn purchased four U.S. postal money orders from Specialist Four Kelly, a postal clerk at the Benjamin Franklin Village (BFV) Post Office in Mannheim, Germany. Specialist Kelly kept the four postal money orders and gave only the receipts to Specialist Cleghorn. Between 15 and 29 October 1980, the appellant, working as a postal clerk also at the BFV Post Office, received one of the money orders, forged the name of "John Maloy" and made other writings on the money order in the amount of $100.00. He then cashed the money order through his own finance window.

The appellant's initial enlistment in the Army ran from 7 June 1977 until 26 July 1981, during which time the offenses of which he was eventually convicted were committed. The appellant reenlisted on 27 July 1981 in Germany, for a term of three years. Subsequently, on 16 September 1981, the appellant was charged with forgery of a U.S. postal money order and receipt of a stolen U.S. postal money order in violation of Articles 123 and 134, UCMJ, 10 U.S.C. §§ 923 and 934 (1976). Pursuant to his pleas the military judge found the appellant guilty of both charges. A general court-martial, composed of officer and enlisted members sentenced appellant to forfeiture of $100.00 pay per month for six months, and reduction to Private E–1. The convening authority approved the sentence.

Appellant contends that the court-martial lacked jurisdiction over both offenses because they were committed during a prior enlistment and neither survives the twin

tests of Article 3(a), UCMJ, 10 U.S.C. § 803.[1] We agree.

■ Once a service member is discharged from the armed forces, that discharge operates as a bar to a subsequent trial for offenses occurring prior to discharge, except in those situations expressly saved by Article 3(a), of the Code.[2] *United States v. Clardy,* 13 M.J. 308 (C.M.A.1982). *See also United States ex rel. Hirshberg v. Cooke,* 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949). Article 3(a) is intended to cover cases where the accused reaches the end of his obligated service and re-enlists. *See* Hearings on H.R. 2498 Before a Subcommittee of the House Committee on Armed Services, 81st Cong., 1st Sess., Index and Legislative History, Uniform Code of Military Justice, pp. 880–83 (1949); *United States v. Clardy, supra* at 313, n. 19.

■ Article 3(a), UCMJ, may be invoked to retain jurisdiction provided that the offense committed is "punishable by confinement for five years or more *and* for which the person cannot be tried in the courts of the United States...." (Emphasis added.)

In the case *sub judice,* the maximum imposable period of confinement for forgery is five years and for receipt of stolen property one year. Hence, as the receipt of stolen property failed the first part of the bifurcated test of Article 3(a), UCMJ, the court-martial clearly lacked jurisdiction over this offense.

■ We turn our analysis to the forgery charge and the extraterritoriality of the applicable federal statute, 18 U.S.C. § 500 (1972).[3] That statute makes punishable the counterfeiting and forgery of United States postal service money orders. However, there is no express language in the statute providing for, or excluding, extraterritorial application. Without evidence of contrary intent, congressional legislation may generally be presumed to apply only intraterritorially. *See American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909); *United States v. Gladue,* 4 M.J. 1 (C.M.A.1977); *United States v. Pizzarusso,* 388 F.2d 8 (2d Cir.1968), *cert. denied* 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968). The absence of express language

1. "(a) Subject to section 843 of this title (Article 43), no person charged with having committed, while in a status in which he was subject to this chapter, an offense against this chapter, punishable by confinement by 5 years or more and for which the person cannot be tried in the courts of the United States or of a state, a territory, or the District of Columbia, may be relieved from amenability to trial by court-martial by reason of the termination of that status."

2. The case *sub judice* concerns a discharge at the end of an enlistment or period of obligated service as opposed to an early discharge given to a soldier to reenlist immediately.

3. Title 18 U.S.C. § 500 provides in pertinent part:

Whoever forges or counterfeits the signature or initials of any person authorized to issue money orders upon or to any money order, postal note, or blank therefor provided or issued by or under the direction of the Post Office Department or Postal Service, or post office department or corporation of any foreign country, and payable in the United States, or any material signature or indorsement thereon, or any material signature to any receipt or certificate of identification thereof; or

Whoever falsely alters, in any material respect, any such money order or postal note; or

Whoever, with intent to defraud, passes, utters or publishes or attempts to pass, utter or publish any such forged or altered money order or postal note, knowing any material initials, signature, stamp impression or indorsement thereon to be false, forged, or counterfeited, or any material alteration therein to have been falsely made; or

    \*     \*     \*     \*     \*     \*

Whoever, with intent to defraud the United States, the Postal Service, or any person, transmits, presents, or causes to be transmitted or presented, any money order or postal note knowing the same—

(1) to contain any forged or counterfeited signature, initials, or any stamped impression, or

(2) to contain any material alteration therein unlawfully made, or

(3) to have been unlawfully issued without previous payment of the amount required to be paid upon such issue, or

(4) to have been stamped without lawful authority; or

    \*     \*     \*     \*     \*     \*

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

giving extraterritorial application to a statute does not necessarily mean that it does not apply. *United States v. Bowman,* 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922). Rather, the Court must examine the thrust of the statute to determine whether the congressional intent is to protect a governmental rather than private interest. In *United States v. Gladue, supra* at 5, the Court of Military Appeals analyzed *Bowman*[4] as distinguishing between classes of criminal statutes:

(1) statutes punishing crimes against the peace and good order of the community (which apply only to acts committed within the territorial jurisdiction of the United States unless Congress had specifically directed otherwise); and

(2) statutes punishing fraud or obstructions against the United States Government (which include by implication acts which were committed in foreign countries).

On its face the primary thrust of 18 U.S.C. § 500 is the protection of the U.S. postal service from various acts of counterfeiting and forgery of postal money orders, especially from acts committed by its employees, *United States v. Dupee,* 569 F.2d 1061 (9th Cir.1978). The United States Government has an absolute duty to main- · tain the integrity of the U.S. postal system which includes its postal money orders both within its borders and in foreign countries. Additionally, the Government has to be protected especially from the criminal activities of its agents and officers. Appellant's position as a postal clerk facilitated his crime and must be considered one of the controlling factors. It is reasonable to assume that Congress was aware that the integrity of the postal system and its money orders would be threatened abroad as well as at home, and it is proper to infer that Congress intended to protect the Government against forgery of these papers wherever the postal system operated. *See United States v. Birch,* 470 F.2d 808 (4th Cir. 1972).

In an analogous statute concerning the embezzlement and theft of public money, property, or records, 18 U.S.C. § 641 the Ninth Circuit Court of Appeals in *United States v. Cotten,* 471 F.2d 744, 749 (9th Cir.1973) concluded that extraterritorial jurisdiction applied, observing that:

Extraterritorial criminal jurisdiction is said to be justifiable under one or more international law theories, depending upon the circumstances of the offense. To author comment upon the justification for extension of the section in question

4. Mr. Chief Justice Taft set forth the test as follows:

We have in this case a question of statutory construction. The necessary *locus,* when not specifically defined, depends upon the purpose of Congress as evinced by the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nations. Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement and frauds of all kinds, which affect the peace and good order of the community, must of course be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard....

But the same rule of interpretation should not be applied to criminal statutes which are,

as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers or agents. Some such offenses can only be committed within the territorial jurisdiction of the Government because of the local acts required to constitute them. Others are such that to limit their *locus* to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the *locus* shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

*United States v. Bowman,* 260 U.S. 94, 97 98, 43 S.Ct. 39, 40–41, 67 L.Ed. 149 (1922).

under the law of nations seems unnecessary since no sovereign is offended by the arrest and conviction of these appellants. Suffice it to say that if extraterritorial application is comprehended by 18 U.S.C. § 641, it is justified by the international law 'objective territorial principle' which condones jurisdiction of an offense committed elsewhere but taking affect within a sovereign that proscribes the conduct and is asserting jurisdiction. This nation has a paramount interest in protecting its property, wherever located, by assertions of its penal laws.

In *United States v. Birch, supra,* the Fourth Circuit sanctioned the prosecution of a United States Army sergeant stationed in the Federal Republic of Germany who procured false applications for identity cards, immunization records, and leave orders using fictitious names. In upholding Congress's constitutional power to punish extraterritorial forgery and the false use of government documents under 18 U.S.C. § 499, the court concluded that "laws punishing fraud against the government include by implication acts committed in foreign countries." *Id.* at 811. This analysis and that in *Cotten* are no less applicable to offenses involving the counterfeiting of U.S. postal money orders.

■ Therefore, we hold that 18 U.S.C. § 500 has extraterritorial application. For this reason the saving provisions of Article 3(a), Code, are not applicable in the case at issue. Accordingly, we find that the court-martial lacked jurisdiction to try appellant.

The findings of guilty and the sentence are set aside and the charges are dismissed.

Senior Judge MILLER and Judge KUCERA concur.