**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Pablo AGUILAR, Defendant-Appellant.**

**No. 84–5084.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1984.

Decided April 2, 1985.

As Amended April 8, 1985.

Pamela J. Naughton, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

A. Carl Yaeckel, Jr., San Diego, Cal., for defendant-appellant.

Before NELSON, BOOCHEVER and REINHARDT, Circuit Judges.

NELSON, Circuit Judge:

Pablo Aguilar was convicted of three counts of violations of 18 U.S.C. § 912 for falsely acting as an officer of the United States Immigration and Naturalization Service (the INS) and for obtaining money in such character. Section 912 states two separate and distinct offenses.[1] Each count of the indictment charged both of the offenses in section 912, "acting as" an officer and "obtaining money in such character," and thus the indictment suffered from duplicity.[2] Aguilar challenges his conviction on three grounds: first, that the government's action taken to cure the duplicitous indictment, an election to pro-

ceed only under one of the two offenses charged in each count, constituted an improper amendment of the indictment; second, that the trial judge committed reversible error in finding Aguilar guilty under both of the offenses charged in each of two counts despite the government's election to proceed under only one offense in each count; and last, that the trial court lacked jurisdiction over the violations of the statute which occurred in Mexico.

We agree with his second contention, and remand for the court below to amend the judgment and re-sentence Aguilar on counts I and II based on conviction of only the first offense charged in each count.

## FACTS AND PROCEDURAL BACKGROUND

Mexican citizen Juana Puentes de Sandoval was standing in line to obtain a visa for her son Raul, at the San Ysidro, California, Port of Entry. Aguilar, dressed in clothes similar to those worn by United States government employees, walked from the United States Immigration Service offices to Sandoval's place in line on the United States side of the border. Aguilar told Mrs. Sandoval to leave because visas were not being issued that day. Aguilar said he was a United States Immigration officer. Mrs. Sandoval told Aguilar she wanted a visa for her son. Aguilar took her address and, later that day, came to her store in

---

1. That section 912 states two offenses is well established. *See United States v. Barnow,* 239 U.S. 74, 75–76, 36 S.Ct. 19, 20–21, 60 L.Ed. 155 (1915) (indictment had three counts of "acting as" officer and three further counts of obtaining money in that capacity); *United States v. Lepowitch,* 318 U.S. 702, 704–05, 63 S.Ct. 914, 916, 87 L.Ed. 1091 (1943) (acting as FBI agent violates clause 1 of section 912); *United States v. Mitman,* 459 F.2d 451, 453 (9th Cir.1972), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 111 (1972) (omission of intent allegation does not render indictment insufficient to state clause 1 charge of acting as an officer of United States); *Graham v. Squier,* 145 F.2d 348, 349 (9th Cir.1944), *cert. denied,* 324 U.S. 845, 65 S.Ct. 676, 89 L.Ed. 1406 (1945) (upholding imposition of consecutive sentences for violations of both clauses for "acting as" and "obtaining money" as an officer of United States).

2. Charging two offenses in one count of an indictment is contrary to Rule 8(a) of the Feder-

al Rules of Criminal Procedure, which provides that an indictment contain "a separate count for each offense." *Id.* The joining in a single count of two or more distinct offenses is termed "duplicity." *See generally* 1 Wright, *Federal Practice and Procedure* § 142 (2nd ed. 1982); 8 *Moore's Federal Practice* § 8.03 (2nd ed. 1984). The vices of duplicity arise from breaches of the defendant's Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count. *See United States v. UCO Oil Company,* 546 F.2d 833, 835 (9th Cir.1976). A duplicitous indictment also could eviscerate the defendant's Fifth Amendment protection against double jeopardy, because of a lack of clarity concerning the offense for which he is charged or convicted. *See id.; Abney v. United States,* 431 U.S. 651, 654, 97 S.Ct. 2034, 2037, 52 L.Ed.2d 651 (1977).

Tijuana and again said he was an INS officer. Mrs. Sandoval paid him 30,000 pesos to obtain visas for three of her children, and gave him the children's official documents. In addition, Aguilar promised to get Mrs. Sandoval's son Raul a job with the INS. Aguilar also told Mrs. Sandoval that he could sell INS-confiscated vehicles to her children. In Tijuana, she gave him a down payment of gold jewelry for two cars and a truck. Aguilar offered to sell an INS-confiscated truck to Antonio Sandoval-Puentes, and, in Tijuana, Antonio's mother paid Aguilar $650 for it. Aguilar told Antonio that he was an INS officer and gave details of his employment.

Aguilar also offered to sell an INS car to Oscar Rodriguez, an American citizen. Aguilar gave Rodriguez details of his employment with the INS and showed him an identification card allegedly issued by the INS. In Tijuana, Rodriguez paid Aguilar $900 for a car, and asked Aguilar to show him the car. Aguilar drove Rodriguez into the United States and pointed out a car in the INS lot. Aguilar then asked to be dropped off at the INS dormitory where he said he lived. He later told Rodriguez he could sell him another car for an additional $600–$900. Aguilar's arrest was precipitated by the suspicions of Rodriguez, who asked INS officials about Aguilar. After INS officials disavowed Aguilar's employment, Rodriguez located him at the San Ysidro Port of Entry and identified him to United States authorities, who arrested him.

The grand jury issued a three-count indictment of Aguilar. Count I alleged that Aguilar falsely acted as a United States official before Mrs. Sandoval and that he obtained money from her in such capacity, in violation of 18 U.S.C. § 912. Count II used the same language concerning Oscar Rodriguez, as did Count III concerning Antonio Sandoval.

The offenses which occurred in the United States include the "false personation" before Mrs. Sandoval and Oscar Rodriguez, as charged in Clause One of Count I and Clause One of Count II of the indictment. The offenses which occurred only in Mexico are the "false personation" before Antonio Sandoval, as charged in Clause One of Count III, and the "obtaining money" charges as set forth in Clause Two of each of the three counts. Before trial, Aguilar's attorney questioned the trial court's jurisdiction over the violations of 18 U.S.C. § 912 which occurred in Mexico, and challenged the indictment for alleging two offenses in each count. He moved for dismissal of the indictment. The government disagreed on the jurisdictional point and then treated the memorandum as a pre-trial motion for dismissal of the indictment for duplicity. *See* Fed.R.Crim.P. 12(b)(2). To cure the duplicity, the government made an election at the start of the trial to proceed only under "Clause One" of section 912 (acting as a United States officer) and treated the "Clause Two" charge (obtaining money in that capacity) as surplusage in the indictment.

The district court asserted jurisdiction over the whole case, including the offenses which occurred in Mexico. It found that Aguilar had both acted as an official toward Mrs. Sandoval and Mr. Rodriguez, and obtained money from them, as alleged in Counts One and Two of the indictment. Thus despite the government's election to proceed only under the "acting as" portion of the indictment, the court also found Aguilar guilty of "obtaining money in that capacity". The court did not find that Aguilar had obtained money from Antonio Sandoval, apparently because it was Mrs. Sandoval who paid Aguilar for Antonio's promised car, but found him guilty of the "acting as" clause in Count III. The judgment pronounced Aguilar "guilty as charged" on all three counts.

## STANDARD OF REVIEW

■ Each argument is a question of law based on undisputed facts which we review *de novo.* *See Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970); *United States v. Castillo-Felix,* 539 F.2d 9 (9th Cir.1976).

## DISCUSSION

Aguilar makes three arguments which pertain to the three different counts upon

which he was convicted. His first two arguments attack the government's election to proceed under only one clause of each count of the indictment, and the trial court's disregard of the election in convicting him of the clause upon which the government chose not to proceed. These arguments concern only Counts I and II, however, since in Count III the trial court explicitly convicted Aguilar only on the "acting as" clause.

Aguilar's jurisdictional argument, in contrast, affects only Count III because acts which constituted violations of Clause One of Counts I and II occurred in the United States. The propriety of extraterritorial application of section 912 is thus at issue solely concerning Count III, for Aguilar's impersonation of an INS officer in the presence of Antonio Sandoval occurred in Mexico.

I. COUNTS I and II.

The issue of the propriety of the indictment requires review of the indictment itself to determine whether it notified Aguilar of the charges against him before the trial, and the effect of the election upon that notice-serving function of the indictment. Aguilar's second challenge, to the propriety of the judgment, raises the issue of prejudice to Aguilar by the evidence presented at trial and the final judgment itself. *See United States v. Mastelotto,* 717 F.2d 1238, 1244, 1246 (9th Cir.1983).

A. Whether the government's election to proceed under only the "acting as" portion of the indictment, treating the "obtaining money" portion as surplusage, was an improper amendment to the indictment.

Aguilar attacks the government's effort to cure a defect in the indictment. *Cf.*

*United States v. Mastelotto,* 717 F.2d 1238, 1244 (9th Cir.1983). This indictment was duplicitous since each count alleged the two separate and distinct offenses which 18 U.S.C. § 912 states in its two clauses. *See United States v. Leggett,* 312 F.2d 566, 569 (4th Cir.1962), *cert. denied,* 377 U.S. 955, 84 S.Ct. 1633, 12 L.Ed.2d 499 (1964) (indictment stated violations of both clauses in one count and was duplicitous), *on remand* 326 F.2d 613 (4th Cir.1964) (after duplicity was cured by government's election to proceed on one clause only). *Cf. United States v. Carr,* 194 F.Supp. 144, 145 (N.D. Cal.1961) (since clause 1 of section 912 requires language "acted as such", indictment charged only violations of clause 2 of section 912 and was not duplicitous). Duplicity in an indictment would constitute reversible error only if Aguilar was misled "to his prejudice." Fed.R.Crim.P. 7(c)(3); *Mastelotto,* 717 F.2d at 1244 n. 4. *See also United States v. Westover,* 511 F.2d 1154, 1155 & n. 2 (9th Cir.1975) (duplicity objection waived absent pre-trial objection). It seems reasonable to apply the same standard to the indictment as amended by the election. We first determine, therefore, whether the election was proper; if it was proper, we will consider whether it prejudiced Aguilar.

We have not heretofore explicitly approved of the practice of election as an alternative to dismissal of a duplicitous indictment but, like the Supreme Court, neither have we disapproved of the practice. *See Abney v. United States,* 431 U.S. 651, 654–55, 664–65, 97 S.Ct. 2034, 2037–38, 2042–43, 52 L.Ed.2d 651 (1977)[3]; *United States v. UCO Oil Co.,* 546 F.2d 833, 835, 838 (9th Cir.1976) (vacating trial judge's

---

**3.** In *Abney* the Court considered a double jeopardy claim through which petitioners sought to bar a trial on remand after an initial conviction was reversed based on improperly admitted evidence. 431 U.S. at 655, 97 S.Ct. at 2038. At the first trial the judge had found the indictment duplicitous and, as an alternative to compelling election, had allowed the prosecutor to establish *both* offenses in the duplicitous count and "instructed the jury to that effect." *Id.* at 654, 97

S.Ct. at 2037. The Third Circuit ordered the government to elect one of the charges for the trial on remand. *Id.* at 655, 97 S.Ct. at 2038. The Supreme Court held that the district judge's jury instruction, emphasizing that both offenses must be found to convict on the duplicitous count of the indictment, prevented any double jeopardy problem from the conviction on the duplicitous count. *Id.* at 664–65, 97 S.Ct. at 2042–43.

dismissal of indictment for duplicity after government refused to make election, finding indictment neither duplicitous nor multiplicitous). Election is explicitly approved as a remedy for multiplicity, which is improper joinder of counts, however; Rule 14 of the Federal Rules of Criminal Procedure provides that "the court may order an election ..., grant a severance or provide whatever other relief justice requires." Fed.R.Crim.P. 14. *See, e.g., United States v. Gann*, 732 F.2d 714, 717 (9th Cir.1984). *See also United States v. Olson*, 504 F.2d 1222, 1224 (9th Cir.1974).

▆▆▆ An election to cure duplicity differs from a Rule 14 election, however, in that choosing one offense within the count to prosecute and treating the rest of that count as surplusage can be challenged as improper amendment of the indictment, the argument Aguilar puts forth. Substantive amendment of an indictment, particularly if the amendment broadens or alters the offense charged, is reversible error since it violates the defendant's Fifth Amendment right to stand trial only on the charges made by a grand jury in its indictment. *Stirone v. United States*, 361 U.S. 212, 216–217, 80 S.Ct. 270, 272–273, 4 L.Ed.2d 252 (1959); *United States v. Dawson*, 516 F.2d 796, 800–802 (9th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975). *See also United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir.1983). Correction of clerical errors and "reading out" of surplusage is permitted, however, as long as the defendant is not prejudiced thereby. *Id.; United States v. Abascal*, 564 F.2d 821, 832 (9th Cir.1977), *cert. denied*, 435 U.S. 942, 953, 98 S.Ct. 1527, 1583, 55 L.Ed.2d 538, 804 (1978).

▆▆▆ Election to cure duplicity, therefore, is acceptable under certain conditions. We must determine whether the government's election was an amendment of form (deletion of surplusage) or of substance (altering nature of charge), and whether the election prejudiced Aguilar's trial preparation because, as a result, he was not properly notified of the charges against him. *See, e.g., United States v. Salinas*,

654 F.2d 319, 325–26 (5th Cir.1981). The distinction between form and substance in amendments is often a difficult one. *See United States v. Von Stoll*, 726 F.2d 584, 587 (9th Cir.1984); *United States v. Stewart Clinical Laboratory, Inc.*, 652 F.2d 804, 805–807 (9th Cir.1981). Yet the question whether Aguilar was prejudiced by the election in his preparation for trial is readily answered. Aguilar was informed of the charge of "acting as" an INS officer by the original indictment. Thus deletion of the additional charge of obtaining money could not prejudice him in the pre-trial preparation of his defense, though it reduced the charges against him. The amendment was one of form rather than substance.

Our conclusion is not shaken by Aguilar's reliance upon our recent decisions in *Miller* and *Mastelotto* for the proposition that narrowing an indictment can also constitute error. *United States v. Miller*, 715 F.2d 1360, 1363 (9th Cir.1983); *United States v. Mastelotto*, 717 F.2d 1238, 1251 (9th Cir.1983). In these cases the deletion changed the indictment to define a lesser offense, for which a grand jury might not have indicted. In Aguilar's case, in contrast, the grand jury indicted for both of the offenses in section 912 but the offenses were mistakenly joined in one count. The grand jury could have indicted in separate counts. *See United States v. Hicks*, 529 F.2d 841, 843 (5th Cir.1976).

B. Whether the conviction should be reversed because the trial judge disregarded the election in finding defendant guilty of both offenses charged in each count.

The question remains whether the trial judge erred by convicting Aguilar on both clauses of each of the first two counts. The government argues that the judge's statements that Aguilar was also guilty of obtaining money during his impersonation of an INS officer were merely findings of fact, but the record and the judgment indicate otherwise.

The question whether a judge is "bound" by election rarely arises because, if initiat-

ed by the government, an election of one charge is usually accompanied by a motion to dismiss the other charges or to strike the other portions of the count. *See, e.g., United States v. Walters,* 477 F.2d 386, 388 (9th Cir.), *cert. denied,* 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973); *United States v. Root,* 366 F.2d 377, 381 (9th Cir. 1966). This election was also unusual in that the government neither moved for permission to elect nor offered a stipulation to that effect. *Cf. United States v. Sheker,* 618 F.2d 607, 609 (9th Cir.1980) (stipulation cured insufficiency of section 912 indictment). The colloquy between government counsel and the judge supports Aguilar's claim that the court approved the election, however.[4]

Following the government's oral election, therefore, the formal text of the indictment remained unchanged since neither party moved to strike the excess language and the court did not initiate such action. The trial proceeded on the assumption that the Clause Two language was surplusage. At the end of the trial, however, the trial judge convicted Aguilar of violations of *both* clauses in Counts I and II. Aguilar argues that he had "notice" only of the charges of violating Clause One, and did not know he was being tried for violating Clause Two since the election effectively dismissed Clause Two.

 We agree that Aguilar lacked notice that he was being tried on the "obtaining money" charges. He claims prejudice in that his trial strategy did not defend against these charges, and specifically omitted cross-examination of witnesses on the "obtaining money" allegation. The conviction on the Clause Two charges was error.

The question remains whether the error was harmless. The government argues that, since the trial judge sentenced Agui-

lar concurrently on each of the three counts rather than consecutively, he was not harmed. The fact that the sentences are concurrent does not relieve our obligation to scrutinize each count upon which Aguilar was convicted. *United States v. DeBright,* 730 F.2d 1255, 1256 (9th Cir. 1984) (en banc). It is not clear from the verdict, however, that the sentence was imposed only for "acting as" a government officer and not *also* for taking money in such capacity, though the sentence of three years was authorized for a single violation of section 912. *See United States v. Pinkney,* 551 F.2d 1241, 1246 n. 37 (D.C.Cir. 1976). Because we cannot ascertain whether the sentence was enhanced because of the convictions on the second clause of Counts I and II, we are unable to hold that the error was harmless.

## II. COUNT III: Extraterritorial application of 18 U.S.C. § 912

The district judge implicitly determined that section 912 should be given extraterritorial application to acts of Aguilar which occurred in Mexico. Aguilar's impersonation of an INS official before Antonio Sandoval included offers to sell visas to Antonio's siblings and to sell him two INS-seized automobiles. *United States v. Bowman,* 260 U.S. 94, 97–98, 43 S.Ct. 39, 40–41, 67 L.Ed. 149 (1922), structures our consideration of Aguilar's argument that section 912 should not prohibit Aguilar's conduct in Mexico.

In *Bowman,* the Supreme Court announced that extraterritorial application should be given to laws which punish fraud perpetrated upon the United States, for otherwise courts would grant "immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home." *Id.* at 97–98, 43 S.Ct. at 41. On the other hand, where Congress intended a

---

**4.** Aguilar's attorney did not move to compel election for he argued that the government should prove *both* offenses as charged. This is indeed one response to duplicity, an alternative to dismissal of the indictment or election. *See Abney,* 431 U.S. at 654, 664, 97 S.Ct. at 2037, 2042; *Abascal,* 564 F.2d at 832. Aguilar's attor-

ney apparently reasoned that proof of both offenses would make the government's task more difficult because of the jurisdictional question concerning the "obtaining of money" activities which occurred in Mexico, an issue which we do not reach.

law to punish only crimes against private individuals, the law may not be extended to encompass crimes occurring outside the territorial jurisdiction of the United States. *Id.*

■ Section 912 should punish offenses like Aguilar's even if committed abroad, for impersonation of United States government officials clearly implicates the authority of the nation. The Supreme Court so held concerning this statute, in another context: "It is the aim of the section not merely to protect innocent persons from actual loss through reliance upon false assumptions of Federal authority, but to maintain the general good repute and dignity of the [government] service itself." *United States v. Barnow,* 239 U.S. 74, 80, 36 S.Ct. 19, 22, 60 L.Ed. 155 (1915); *United States v. Lepowitch,* 318 U.S. 702, 704, 63 S.Ct. 914, 916, 87 L.Ed. 1091 (1943). Aguilar's argument that his actions are more properly characterized as mere petty theft is without merit.

Our conclusion that Aguilar's impersonation was prohibited by section 912 is reinforced by the fact that he acted as an immigration officer. The Ninth Circuit has found, under the *Bowman* analysis, that forging immigration materials violates United States law even though the acts took place in Mexico. *United States v. Castillo-Felix,* 539 F.2d 9, 12–13 (9th Cir. 1976). An impersonation in Canada to obtain a United States visa has been found to violate United States law. *United States v. Khalje,* 658 F.2d 90 (2d Cir.1981). In considering impersonation of United States Army personnel in Germany, the Fourth Circuit reached the same result. *United States v. Birch,* 470 F.2d 808 (4th Cir.1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973).

The judgment of conviction on Count III is affirmed.

## CONCLUSION

Aguilar was not prejudiced in preparing for trial by the government's election. The district court's failure to consider itself bound by the government's election after agreeing to it resulted in Aguilar's conviction on a charge which was, in effect, dismissed from the indictment. We remand for Aguilar to be resentenced on Counts I and II based upon conviction of the counts in the indictment as amended by the government's election. We affirm the conviction on Count III.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.