53 F.3d 341
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff- Appellee,
v.
Albert Manley PEREZ, Defendant-Appellant.
 No. 94-10286.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 17, 1995.
Decided April 25, 1995.
 
 Before: FLETCHER, REINHARDT, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Albert Manley Perez appeals his conviction for stealing government property in violation of 18 U.S.C. Sec. 641. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 
 3
 Appellant Perez owned a computer business in Guam called AMP Computers, which sold, among other things, a brand of computer hardware called ALR. His friend and partner, Juan Palomo, worked in the supply depot of Naval Station Guam. An AMP employee testified that one day Palomo called Perez at AMP and asked if Perez knew of anyone who needed monitors because he had some that were just "laying around."
 
 
 4
 On May 14, 1994, Palomo, with the help of a government informant, stole twelve ALR monitors from the supply depot and transported them in a Navy vehicle to AMP, where he was met by Perez who helped him unload the monitors and stock them in the AMP office. Perez then covered up the shipping labels on the boxes and told the AMP employee that they would sell the monitors as AMP stock, using warranties from other monitors legitimately acquired and sold by AMP should anything go wrong with them. Perez later sold one of the monitors to an FBI agent.
 
 
 5
 Palomo learned of an investigation at the supply depot and called Perez, asking that Perez prepare some false documentation indicating that the monitors were properly at AMP for service. Perez prepared the document, but the FBI executed a search of AMP before the document was delivered.
 
 PROCEEDINGS
 
 6
 A Grand Jury returned an indictment on December 1, 1993, charging Palomo and Perez in a single count, which stated in its entirety:
 
 
 7
 On or about May 14, 1993, in the District of Guam, the defendants, JUAN M. PALOMO and MANLEY PEREZ, willfully and knowingly did steal, convey and dispose of property of the United States, to-wit: twelve ALR Super VGA computer monitors, of a value in excess of $100 [with intent to convert said property to their own use and sell it knowing said property to have been stolen], in violation of 18 U.S.C. Secs. 2 and 641.
 
 
 8
 [brackets added].
 
 
 9
 On the day he was arraigned, Perez moved to dismiss the indictment on the ground of duplicity. He argued that the indictment charged two crimes, stealing and receipt of stolen property, in the same count. The language in brackets above, he asserted, charged a separate crime of receiving stolen property. The motion was denied.
 
 
 10
 Following the close of evidence, while discussing jury instructions, Perez requested that the government amend the indictment to delete the language bracketed above, arguing again that the language suggested an additional charge for receipt of stolen property rather than charging theft alone. The government agreed to delete the language and the charge was submitted to the jury solely on a theory of aiding and abetting the theft.
 
 ANALYSIS
 I. The Indictment Was Not Duplicitous
 
 11
 Perez argues that the indictment improperly charged both theft and receipt of stolen property, pointing to language in the indictment that Perez stole the property "with intent to ... sell it knowing said property to have been stolen."
 
 
 12
 Duplicity in the indictment is reversible error if Perez was misled to his prejudice. United States v. Aguilar, 756 F.2d 1418, 1422 (9th Cir. 1985). Theft and receipt of stolen property are separate crimes. Milanovich v. United States, 365 U.S. 551, 558 (1961).
 
 
 13
 Perez is correct in asserting that the language "knowing said property to have been stolen" comes from the second paragraph of Sec. 641, which criminalizes receipt of stolen property. He is incorrect, however, in asserting that this language renders the indictment duplicitous by charging him with receipt of stolen property in addition to its theft. The indictment is clear that Perez is being charged with "willfully and knowingly" stealing property of the United States. The addition of the allegation that this theft was "with the intent to ... sell it knowing said property to have been stolen" does not create a separate charge of receipt of stolen property; it merely adds a description of the intent of the accused in stealing the property. The indictment nowhere alleges "receipt" of the property.
 
 
 14
 II. THE ALLEGEDLY DUPLICITOUS LANGUAGE IN THE INDICTMENT DID NOT PREJUDICE PEREZ.
 
 
 15
 Perez argues that he was prejudiced by the inclusion of the language discussed above in the indictment, in that he prepared to defend himself against both a charge of theft and a charge of receipt of stolen property; had he been put on notice that the only charge was one of theft, he would have testified on his behalf and been able to present, he argues, evidence that was exculpatory on the theft charge.
 
 
 16
 As discussed above, the language in the indictment that Perez complains of cannot be reasonably construed as charging receipt of stolen property, since it nowhere alleges "receipt."
 
 
 17
 III. AMENDMENT OF THE INDICTMENT DID NOT VIOLATE THE FIFTH AMENDMENT.
 
 
 18
 Substantive amendment of an indictment, "particularly if it broadens or alters the offense charged, is reversible error since it violates the defendant's Fifth Amendment right to stand trial only on the charges made by a grand jury in its indictment." Aguilar, 756 F.2d at 1423. Deleting surplusage is permitted, however, as long as the defendant is not prejudiced thereby. Id.
 
 
 19
 Perez requested that the government delete the language in the indictment concerning his intent to sell the property; he cannot now complain that the government's agreement to do so violated his rights. The amendment did not in any event prejudice Perez. He was informed of the theft charge; eliminating language concerning his intent in stealing the property was an amendment "of form rather than substance" which did not violate the Fifth Amendment. Id.
 
 
 20
 IV. AMENDMENT OF THE INDICTMENT DID NOT VIOLATE FUNDAMENTAL FAIRNESS.
 
 
 21
 Perez argues that the Government "violates accepted norms of fundamental fairness when, pretrial, it steadfastly refuses to make election between charges in a duplicitous indictment ... then, after the close of evidence, amends the indictment to cure the duplicity."
 
 
 22
 Perez himself requested the amendment after the close of evidence. As discussed above, the amendment did not eliminate a second charge, but merely eliminated a surplus allegation of appellant's intent in stealing the monitors. Neither the inclusion nor the elimination of that language violated "prevailing notions of fundamental fairness." See United States v. Endicott, 869 F.2d 452, 455 (9th Cir. 1989).
 
 
 23
 V. THE COURT DID NOT ERR IN DECLINING TO GIVE AN INSTRUCTION DEFINING "INTENTIONALLY"
 
 
 24
 The district court asked whether the parties wanted an instruction defining "intentionally" and counsel for Perez said he did. The court then asked him to submit one. When he failed to do so the court refused to give such an instruction. Perez argues that this was error.
 
 
 25
 This court's "inquiry is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberation." United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir. 1991).
 
 
 26
 The case against Perez was based on an aiding and abetting theory. The government told the jury in closing that "aiding and abetting is the heart of this case." The court instructed the jury that "the evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping another commit the crime of theft of government property."
 
 
 27
 The instructions did not "omit an element of the offense" and hence there was no constitutional error of the type at issue in Martinez v. Borg, 937 F.2d 422, 424 (9th Cir. 1991), where the court failed to instruct the jury that intent was a necessary element of aiding and abetting a crime.
 
 
 28
 Nor was there error in failing to define "intentionally" separate from the instruction that intent is a necessary element of aiding and abetting. The court made it clear that "knowingly and intentionally" aiding and abetting is distinct from merely associating with a thief or being present at the scene, that it requires acting "with knowledge and intention of helping another commit the crime." The jury needed no further definition of intentionally in order to find that Perez knowingly and intentionally aided and abetting the theft. Hence the instructions were adequate to guide the jury's deliberation.
 
 
 29
 VI. OUT-OF-COURT STATEMENTS WERE PROPERLY ADMITTED AS STATEMENTS OF COCONSPIRATORS.
 
 
 30
 The government introduced two hearsay statements against Perez. Scott, the naval supply depot employee who informed the FBI of the pending theft, and who wore a recording device supplied by the FBI while he helped Palomo steal the monitors, testified to an out-of-court statement that Palomo made to him the day before the theft in which Palomo said AMP was willing to buy the monitors. Dulay, the AMP employee who heard Perez speaking to Palomo before the theft, testified as to Perez's out-of-court statements to him concerning the content of the call from Palomo.
 
 
 31
 The government argued that these hearsay statements were admissible under the exception for admissions of coconspirators. The government must set a three-part foundation to come within that exception: (1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; and (3) a showing that the statements were made in the course of and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171 (1987). The government need not charge a count of conspiracy for such evidence to be admitted. United States v. Layton, 855 F.2d 1388, 1398 (9th Cir. 1988), cert. denied, 489 U.S. 1046 (1989).
 
 
 32
 In denying the defendant's motion in limine to suppress the statements, the district court held that the government had presented sufficient evidence of the conspiracy, noting that "people don't just ordinarily drive up to somebody's business and start unloading a Navy truck full of computer monitors." Apparently the court inferred an agreement to steal the monitors from the facts surrounding their delivery to Perez at AMP and "several other facts" which, the court found, constituted "ample evidence of working in concert."
 
 
 33
 The court's finding that there was "ample evidence" to support a finding of conspiracy was not clearly erroneous.
 
 
 34
 VII. THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE VERDICT
 
 
 35
 This court will not overturn the verdict on insufficiency grounds unless, reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Lennick, 18 F.3d 814, 819 (9th Cir.), cert. denied, 115 S.Ct. 162 (1994).
 
 
 36
 A rational trier of fact could have found, from the fact that Perez discussed disposal of the monitors with Palomo before the theft and from the conduct of Perez upon receiving the monitors, that Perez intentionally aided and abetted the theft.
 
 
 37
 Based upon the forgoing, the conviction is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36-3